Filed 1/29/21  In re D.R. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re D.R., a Person Coming Under the Juvenile Court Law. | C090961 |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>D.R.,<br><br>Defendant and Appellant. | (Super. Ct. No. JV139770) |

The juvenile court sustained allegations of a juvenile wardship petition charging Minor D.R., who was 14 at the time of his commitment, with one count of robbery and two counts of attempted robbery.  Following a contested disposition hearing, the minor was adjudged a ward of the Sacramento County Juvenile Court and committed to the Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ).  On

1

appeal, the minor contends the juvenile court abused its discretion by committing him to a Level A facility. We affirm the judgment.

FACTS AND PROCEDURAL HISTORY

The Sacramento County District Attorney filed a petition under Welfare and Institutions Code section 602 (Statutory section references that follow are to the Welfare and Institutions Code unless otherwise stated), charging the minor in count one with misdemeanor battery (Pen. Code, § 242) and in count two with misdemeanor trespass (Sac. City Code, § 9.16.140, subd. (b)(1)). The District Attorney filed a second wardship petition charging the minor in count one with making a criminal threat (Pen. Code, § 422), in count two with unlawfully taking and driving a vehicle (Veh. Code, § 10851, subd. (a)), and in count three with receiving a stolen vehicle (Pen. Code, § 496d, subd. (a)). The District Attorney filed a third wardship petition charging the minor in count one with robbery (Pen. Code, § 211), and in counts two and three with attempted robbery (Pen. Code, §§ 664/211). The minor denied all charges in the petitions.

A contested jurisdictional hearing was held on the third wardship petition. R.B., a pharmacist, testified that she and her technician were working at a Walgreens when two male suspects, later identified as D.S. and the minor, jumped over the pharmacy counter. The two males confronted R.B. and her technician, demanding OxyContin and promethazine with codeine. R.B. tried to explain that the drugs were in a time-delayed safe and she could not make it open right away. The minor and D.S. jumped back over the counter and fled. Another Walgreens employee, C.V., saw the perpetrators as they fled the store and recognized the male wearing the blue hoodie as the minor.

Another pharmacist, K.L., testified that on the same day, she and intern T.L. were working at a nearby Rite Aid. About 30 minutes after the minor and D.S. fled Walgreens, K.L. noticed two males--one wearing a gray hoodie and the other a blue hoodie, who she later identified as the minor--looking into the pharmacy. She became

2

suspicious because both males had their hoods up even though it was almost 100 degrees outside and K.L. began to close the pharmacy gate. Before she was able to close it all the way, D.S. jumped over the pharmacy counter and attacked T.L. The minor shoved K.L. and ordered her to open the pharmacy door. K.L. then began screaming and calling for help. The minor ordered her to "shut the eff up, B --." The minor and D.S. pulled K.L. to the door to open it, and someone painfully shoved her several times in the back as she struggled to unlock it. When she finally unlocked and opened the pharmacy door, D.S. demanded "Norcos" and codeine. He took all the promethazine and codeine solutions before he and the minor fled.

The court found the allegations in counts one through three to be true and sustained the petition.

The Sacramento County Interagency Placement Committee (IPC) recommended that the minor be placed in an in-state Level A facility. IPC's recommendation was "largely based on the fact that, although the minor has been under the supervision of Probation and received community-based services, he has, since coming to the attention of the Court in November 2018, continued to engage in multiple acts of criminal conduct that seems to be escalating in terms of seriousness."

Noting the minor's ongoing and violent criminal behavior, IPC believed that he "requires a high level of structure and supervision to ensure the safety of the community as he receives the treatment and educational programming that he requires to help him address his individualized treatment needs and achieve his rehabilitation goals." IPC further recommended that the minor be placed "a considerable geographic distance from his immediate community to discourage his [absent without leave] behavior and provide him with the opportunity to focus on his placement and treatment goals without the distraction of the negative influences in his community." Under the heading, "Reason other alternatives are not considered suitable," IPC stated its strong belief that, "based on the minor's ongoing engagement in criminal conduct, even while he is under the

3

supervision of Probation," his "treatment and rehabilitation needs exceed what is able to be provided in a community-based setting." It opined that there were "suitable in-state placements that will provide the minor with the structure, supervision, services and supports that he requires for rehabilitation and learning how to redirect his behaviors in ways that do not place others at risk of harm."

The probation department also filed a social study report recommending Level A placement. The report noted concerns regarding the minor's escalating behavior "despite prior interventions," which interventions included "Electronic Monitoring, Home Supervision, and JJDTP Counseling services."

The report also noted the increase in seriousness and boldness of the minor's offenses, unsuccessful prior interventions, and the minor's severe anger issues and verbal and physical aggression. Citing the minor's disciplinary record from school and juvenile hall, including previous citations and petitions, the report opined that he demonstrated "a clear disregard for authority and obeying set rules." Summarizing the IPC recommendation, the probation department similarly recommended that appellant be placed in a Level A facility.

At the dispositional hearing, the prosecution agreed with the Level A placement recommended by IPC and the probation department, arguing that such a placement would be appropriate under the circumstances. Defense counsel requested that the court return the minor to his grandmother's home. Counsel argued that, having never been placed on probation, the minor had never had the opportunity to take advantage of any probation services. Counsel explained that the minor had always lived with his grandmother, who was then retired and could keep an eye on him. Noting that the minor had recently turned 14 years old, counsel argued that a Level A placement would "expose him to older and potentially more criminally sophisticated children, and that would not be in his best interest."

4

The juvenile court advised the minor: "In the Court's opinion, you need to do your Level A first and then you can go home to Grandma. [¶] I'm looking at the conduct over the course of an entire year while living at home with Grandma, and that's what makes me think he needs much more intensive services. And the violent nature of these actions, to get those daily therapy sessions in an intensive program and then come back home to Grandma. I think you can do well in them because you look like you're improving while you're in the juvenile hall, but you need the tools in your toolbox that a Level A program can give you."

The court adjudged the minor a ward of the court, removed him from the care and custody of his grandmother, and committed him to Level A placement, among other terms and conditions of probation. The first and second wardship petitions were dismissed.

The minor filed a timely notice of appeal.

DISCUSSION

The minor contends the juvenile court abused its discretion in committing him to a Level A facility and the court failed to seriously consider a less restrictive placement that would be more beneficial to him. He contends "there were numerous, less restrictive options at the court's disposal that it could have imposed on [the minor] to achieve his rehabilitative goals and maintain public safety at the same time."

Minors under the juvenile court's jurisdiction must receive "care, treatment, and guidance consistent with their best interest and the best interest of the public." (§ 202, subd. (b).) "The decision of the juvenile court may be reversed on appeal only upon a showing that the court abused its discretion in committing a minor to [a Level A placement]. [Citations.] An appellate court will not lightly substitute its decision for that rendered by the juvenile court. We must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial

5

evidence to support them. [Citations.] In determining whether there was substantial evidence to support the commitment, we must examine the record presented at the disposition hearing in light of the purposes of the Juvenile Court Law." (*In re Michael D.* (1987) 188 Cal.App.3d 1392, 1395.) Those purposes include the "protection and safety of the public"; to that end, punishment is now recognized as a rehabilitative tool. (§ 202, subds. (a), (b); see *In re Michael D.,* at p. 1396.) The juvenile court's commitment decision does not constitute an abuse of discretion where the evidence "demonstrate[s] probable benefit to the minor from commitment . . . and that less restrictive alternatives would be ineffective or inappropriate." (*In re George M.* (1993) 14 Cal.App.4th 376, 379.)

Here, the IPC recommendation noted the minor's continuing and escalating criminal conduct despite having been under the supervision of probation and having received community-based services. As elaborated upon in the probation report, these offenses occurred between November 27, 2018, and July 14, 2019, and included battery, assault, multiple trespasses, possession of tobacco, robbery, criminal threats, vehicle theft, possession of stolen property, and the current offenses. The current allegations of robbery and attempted robbery, which were found to be true, were serious offenses. (See *In re Robert H.* (2002) 96 Cal.App.4th 1317, 1330 [gravity of the offense is relevant in determining the appropriate disposition].)

Having reviewed the record, we find no abuse of discretion. Substantial evidence supports the juvenile court's commitment decision. The record reflects the minor committed repeated and escalating violations. (See *In re Nathan W.* (1988) 205 Cal.App.3d 1496, 1502 [a probation violation supports a finding that the minor has been tried on probation and failed to reform].) The IPC recommendation specifically noted that his criminal conduct had continued and escalated despite having "been under the supervision of Probation and received community-based services." The record demonstrates that the minor had prior interventions, including electronic monitoring,

home supervision, and counseling services, while in the custody of his grandmother but failed to reform. The record supports the conclusion that out-of-home placement was in the best interest of the minor and was appropriate for the protection and safety of the community. The court did not err in concluding that a Level A placement was in the minor's best interest.

The minor asserts that the court failed to adequately consider alternative less restrictive placements. But the record shows that the juvenile court considered less restrictive placements and did not abuse its discretion in rejecting them as ineffective or inappropriate. The minor had failed at prior less restrictive placements, leading to escalating criminal behavior and the charged offenses. In view of these failures, the juvenile court reasonably concluded that the minor's best chance at rehabilitation was a Level A program: "I'm looking at the conduct over the course of an entire year while living at home with Grandma, and that's what makes me think he needs much more intensive services. And the violent nature of these actions, to get those daily therapy sessions in an intensive program and then come back home to Grandma. I think you can do well in them because you look like you're improving while you're in the juvenile hall, but you need the tools in your toolbox that a Level A program can give you." Such a restrictive environment was necessary to ensure the minor's participation in the rehabilitative treatment program. "The purposes of juvenile wardship proceedings are twofold: to treat and rehabilitate the delinquent minor, and to protect the public from criminal conduct. [Citations.] The preservation of the safety and welfare of a state's citizenry is foremost among its government's interests . . . ." (*In re Jose C.* (2009) 45 Cal.4th 534, 555.)

The minor further contends that the juvenile court "compounded its error by . . . ordering [him] placed in a Level A placement that would be 'a considerable geographic distance from his immediate community.' " He argues that "there is simply no evidence that such a placement could or would accomplish" the goal of keeping him focused on his

7

placement and treatment goals without the distraction of negative influences in his community. But the minor acknowledges at least two instances of absconding, in which he violated curfew and the conditions of his electronic monitoring. (See *In re Jose R.* (1983) 148 Cal.App.3d 55, 61 ["Among considerations for commitment . . . [include] escape from a less secure facility"].) Not only did the record show that the minor had a history of absconding, but the probation report also expressly noted that, despite a "non-association order," he continued to associate with D.S. The probation report noted a prior incident where the minor and D.S. stole a vehicle and drove away in it.

The circumstances here are thus distinguishable from those in *Nicole H.*, a case upon which the minor relies and which involved foster placement of a minor rather than a DJJ commitment. (*In re Nicole H.* (2016) 244 Cal.App.4th 1150, 1156.) In *In re Nicole H.*, a juvenile was placed at a group home that was hours away from the juvenile's father's home, and the appellate court concluded this was reversible error because the record was "devoid of any evidence or reasoning supporting a group home placement far from appellant's father's home." (*Id.* at p. 1157.) The court in *In re Nicole H.*, however, reaffirmed that "a minor's special needs and best interests may justify a distant placement." (*Id.* at p. 1156.)

Here, for the reasons we have already explained, substantial evidence supports the juvenile court's placement of the minor in a Level A program, even though it may be distant from his grandmother. While the location and level of support of the minor's family is certainly a relevant factor for the juvenile court to consider, it is not the only, let alone the determinative, factor in deciding a juvenile's placement. Rather, as we have noted, the statutory scheme expressly requires the juvenile court to consider other factors that do not relate directly to family, including: "(1) the minor's age, (2) the circumstances and gravity of the offense, and (3) the minor's previous delinquent history. (§ 725.5.)" (*In re Greg F.* (2012) 55 Cal.4th 393, 404.) Accordingly, the juvenile court could have reasonably concluded that a placement close to the minor's home would only

8

encourage continued absconding and association with D.S. and would not have been in the minor's best interest.

A minor does not show error on appeal simply by asserting that the juvenile court could have ordered a less restrictive placement. Rather, the minor must show that the court abused its discretion in its decision. (*In re Michael D., supra*, 188 Cal.App.3d at p. 1395.) Here, the minor has failed to make this showing. Accordingly, the court did not err in rejecting less restrictive placements.

DISPOSITION

The judgment is affirmed.

_____

HULL, Acting P. J.

We concur:

_____

MAURO, J.

_____

MURRAY, J.

9